UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DYMARID EMILE CARTER,

       Petitioner,                        Case No. 1:19-cv-13598

v.                                         Honorable Thomas L. Ludington
                                           United States District Judge
ROBERT VASHAW,

       Respondent.
_____/

**OPINION AND ORDER DENYING WITH PREJUDICE PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Dymarid Emile Carter, incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254.

He was convicted by a jury in the Wayne County Circuit Court of first-degree premeditated murder, MICH. COMP LAWS § 750.316(1)(a), two counts of assault with intent to commit murder, MICH. COMP LAWS § 750.83, and felony-firearm, MICH. COMP LAWS § 750.227b.

Petitioner contends the judge erred by allowing a police officer to offer lay opinion testimony identifying Petitioner as the suspect after reviewing a surveillance videotape and, therefore, there was insufficient evidence to convict him.

His petition will be denied because his claims lack merit.

**I.**

Petitioner was convicted by a jury in the Wayne County Circuit Court. The following facts, as stated by the Michigan Court of Appeals, are presumably correct[1]:

> Defendant's convictions arise from a shooting at a strip mall in Detroit on August 16, 2016, which resulted in the death of 27-year-old Kuron Brandon. Brandon went to the strip mall with his friends, Christopher Ritter, Eric Little, and Terrence Averitte. Little parked his vehicle and entered one of the businesses at the strip mall while the others waited outside. Ritter and Averitte remained in the back seat of the car, but Brandon exited the car and stood by the back passenger side window. A group of four younger males walked by and Brandon began arguing with one of the members of the group who was wearing a white t-shirt. Ritter told Brandon to "leave it alone" because the others were younger and seemed to want "to start something." The four younger males walked away and Ritter saw them enter a dollar store at the end of the strip mall. Shortly thereafter, gunshots were fired that shattered the window of the vehicle occupied by Ritter and Averitte. After the shooting stopped, Ritter and Averitte discovered Brandon lying on the ground outside the vehicle. He had been shot three times and died from his wounds.
> Although witnesses did not see the shooter, surveillance video footage showed a man wearing all black—who was identified as defendant by a police officer—stop at the door of the dollar store before exiting. He appeared to pull something from his right pocket and then make a racking motion as he exited the store. Video footage showed four men exiting the store and move back and forth, while peeking toward the front of the strip mall. The man wearing black ran toward the back of the strip mall with a man in a white t-shirt and jeans. Less than a minute later, a man wearing black could be seen going to the front of the store, crouching slightly, and pointing his arms in front of him. The video footage showed Brandon falling to the ground and the man in black running away.

*People v. Carter*, No. 336793, 2018 WL 3862103, at * 1 (Mich. Ct. App. Aug. 14, 2018) (per curiam) (unpublished). The Michigan Supreme Court denied him leave to appeal. *People v. Carter*, 922 N.W.2d 353 (Mich. 2019).

Petitioner seeks habeas relief as follows:

> The trial court abused its discretion and committed clear error in allowing Improper testimony by officer Hoppe who testified as a video expert by discerning the identity of the perpetrators in the video, when the genuine video expert couldn't

---

[1] "Findings of fact made by the state court are presumed to be correct unless rebutted by 'clear and convincing evidence.'" *Hartman v. Bagley*, 492 F.3d 347, 356 (6th Cir. 2007) (quoting *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007)).

> discern any individual facial features enough to make any authentic identifications. Mr. Carter's fifth and fourteenth amendment right to due process were violated because of these proceedings.

ECF No. 1 at PageID.6. By contesting the admissibility and reliance of this evidence, Petitioner also argues the jury convicted him with insufficient evidence.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

A state-court decision is "contrary to" clearly established federal law if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

If the state decision was not "contrary to" clearly established Federal law, then it "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In this way, to obtain habeas relief in federal court, Petitioner must demonstrate that the state court's denial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"Thus, the Petition should be denied if it is within the 'realm of possibility' that fairminded jurists could find the state-court decision to be reasonable." *Baugh v. Campbell*, No. 1:19-CR-10032, 2021 WL 5989017, at *8 (E.D. Mich. Dec. 17, 2021) (quoting *Woods v. Etherton*, 578 U.S. 113, 113 (2016) (per curiam)).

## III.

### A.

Petitioner first asserts the trial judge erred by allowing a police officer to offer lay opinion testimony identifying Petitioner as the perpetrator after viewing the surveillance videotape of the shooting incident. ECF No. 1 at PageID.15, 18, 29.

But the Michigan Court of Appeals rejected that claim as follows:

> In this case, Officer Ronald Hopp observed the video of four young men entering the dollar store briefly and then exiting again. Officer Hopp identified the man wearing all black as defendant and identified another man with defendant, who was wearing a white t-shirt, as Davon Reese. Officer Hopp's testimony was rationally based on his perception because he personally watched the video at the dollar store, at the police station, and again at trial. See MRE 701. And his testimony was helpful to the jury. As defense counsel acknowledged repeatedly at trial, the dollar store video was unclear because of its angle and "you can't really see the faces of the individuals." The trial court similarly concluded that the video was "grainy" and the "clearness . . . cannot be ascertained by someone who is not necessarily familiar with that individual."
>
> According to Officer Hopp, he was assigned to the precinct where defendant lived, and defendant would hang out at an intersection that Officer Hopp patrolled frequently. As a result, Officer Hopp saw defendant about three times a week. In addition, Officer Hopp testified before trial, and outside the presence of the jury, that he had personally arrested defendant three times, once as recently as 15 days before the shooting. Because of Officer Hopp's familiarity with defendant, including his height, weight, hairstyle, complexion, and a unique bumpy skin condition on his cheeks, Officer Hopp was able to make a determination about defendant's identity on the video that the jury was not equally capable of making. See MRE 701; *Freed*, 286 Mich. App. at 346-347.
>
> Further, his past experience with Reese allowed Officer Hopp to identify him on the video and testify that he had observed Reese and defendant together before. Thus, because of Officer Hopp's prior familiarity with defendant, the admission of his testimony identifying defendant on the video footage from the dollar store was not an abuse of discretion. Moreover, contrary to defendant's

argument on appeal, Officer Hopp did not identify defendant as the shooter. Whether the person in all black at the dollar store, who Officer Hopp opined was defendant, was the same person in black who came from behind the strip mall shortly afterward and appeared to fire shots at the victim and the car remained a question of fact for the jury.

*People v. Carter*, No. 336793, 2018 WL 3862103, at *2 (Mich. Ct. App. Aug. 14, 2018) (per curiam) (unpublished).

1.

Petitioner is not entitled to habeas relief on his claim that Officer Hopp offered improper lay opinion testimony in violation of Michigan Rule of Evidence 701. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited in federal habeas review to deciding whether a state-court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court, unless they offend a fundamental principle of justice. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000) (citations omitted). Petitioner is not entitled to habeas relief on his claim that the officer's testimony was impermissible lay opinion testimony. *See Charles v. Thaler*, 629 F. 3d 494, 500 (5th Cir. 2011) ("Because the state determined that [the law-enforcement officer's] testimony was permissible lay opinion under state evidentiary law notwithstanding his comment on [the officer's] attitude, a federal habeas court may not conclude otherwise."). Petitioner has not demonstrated that the state court offended a fundamental principle of justice in applying Rule 701.

2.

Petitioner is also not entitled to habeas relief by arguing Hopp's opinion testimony was improper because it invaded the province of the jury to determine whether Petitioner was guilty.

In *Cooper v. Sowders*, the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to offer expert testimony that all the evidence linked the petitioner, and no one else, to the crime. *Cooper v. Sowders*, 837 F.2d 284, 288 (6th Cir. 1988). The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

But *Cooper* does not entitle Petitioner to habeas relief for several reasons. First, Officer Hopp was not presented as an expert witness at Petitioner's trial. Second, the jury was instructed to judge Hopp's testimony the same as the testimony of any other witness. ECF 9-12 at PageID.819. These two facts alone distinguish Petitioner's case from the situation in *Cooper*. *See, e.g.*, *Norton v. Boynton*, No. 08–13200, 2011 WL 282433, * 8 (E.D. Mich. Jan. 26, 2011). Third, "the *Cooper* court owed no deference to the state court decision on these issues" because it predated AEDPA. *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010).

Moreover, there is not "a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.* Nor has Petitioner identified any. Because the Supreme Court has not decided that a police officer may not offer a lay opinion as to a criminal defendant's guilt or innocence, the Michigan Court of Appeals's rejection of the petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Finally, both federal and Michigan law permit a witness to offer lay-opinion testimony identifying a defendant from a videotape or surveillance photograph if the witness has prior familiarity with the defendant and is more able than a jury to identify the defendant from the

videotape or photograph. *See United States v. Houston*, 813 F.3d 282, 291–92 (6th Cir. 2016); *People v. Fomby*, 831 N.W.2d 887, 890–91 (Mich. Ct. App. 2013).

For these reasons, Petitioner is not entitled to habeas relief. *See Reid v. Rewerts*, No. 21-1133, 2021 WL 6881291, *1–2 (6th Cir. Sept. 9, 2021) (denying certificate of appealability because petitioner failed to make a substantial showing of the denial of a constitutional right based on witnesses identifying him from surveillance photos and video).

**B.**

Petitioner makes three arguments that the jury convicted him on insufficient evidence.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970); *see also* William E. Thro, *No Angels in Academe: Ending the Constitutional Deference to Public Higher Education*, 5 BELMONT L. REV. 27, 55 (2018) (stating that "beyond a reasonable doubt" means "99% certainty"). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). To that end, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (citation omitted).

In a sufficiency-of-evidence challenge, circumstantial evidence receives the same weight as direct evidence. *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir.

2006); *accord Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008). Indeed, circumstantial evidence can "be more certain, satisfying[,] and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) ("If the jury is convinced beyond a reasonable doubt [based solely on circumstantial evidence], we can require no more."); *Harrington v. Richter*, 562 U.S. 86, 113 (2011).

A federal habeas court may not overturn a state-court decision that rejects a sufficiency-of-evidence claim simply based on disagreement with the outcome. The state-court decision must be an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). To that end, the state court's finding must be "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the witness's credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and to resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court must therefore defer to the factfinder's assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

**1.**

Petitioner first states there was insufficient evidence to convict him of being the perpetrator of the shooting.

The Michigan Court of Appeals rejected this claim as follows:

> Video footage from three different businesses at the time of the shooting depicts four young men at the strip mall. While the victim, Ritter, and Averitte waited for Little outside one of the businesses at the mall, the four young men walked by and one of them in a white t-shirt—who was later identified as Davon Reese—had an altercation with the victim. Referring to the video footage, the prosecutor argued that the jury could infer from the gestures of the young man wearing all black that he backed up Reese during the altercation. Ritter identified the man in black as defendant, both in a photographic array and at trial.
> Ritter and Averitte testified that, after the altercation, they saw the four young men briefly enter the store at the end of the strip mall and the dollar store video footage similarly corroborated their testimony. Again, Officer Hopp identified the young man wearing black on the dollar store footage as defendant. After the man in black retrieved an object from his pocket and made what Officer Hopp described as a "racking motion," the four young men exited the store. Although the video footage outside the strip mall was remote and did not show the young men's faces well, it nevertheless depicted four men wearing similar clothing walk to the side of the dollar store and then a man wearing black and a man in a white t-shirt running behind the building. Nineteen seconds later, a man in black appeared on the video footage again, walking from behind the strip mall on the other side. He then peeked to look toward the victim. The footage shows the back of the man in black crouch down and point his hands toward the victim, after which the victim falls. Meanwhile, Ritter and Averitte were diving for cover from gunshots. Even though witnesses only identified defendant at the strip mall before the shooting, and no witnesses identified defendant as the shooter, the jury could infer from the shooter's clothing and the timing of his appearance from behind the strip mall that defendant was the shooter. Viewing the evidence in a light most favorable to the prosecution, it was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant was the shooter.

*People v. Carter*, No. 336793, 2018 WL 3862103, at *3 (Mich. Ct. App. Aug. 14, 2018) (per curiam) (unpublished) (internal citations and footnotes omitted). It also noted that evidence was presented that Petitioner and Reese had spent time together in the past. *Id.* at *3 n.1.

Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82

F. App'x 147, 150 (6th Cir. 2003) (per curiam) (unpublished) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970) (per curiam)). Moreover, the identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Here, there was sufficient evidence presented for the jury to conclude that Petitioner was the shooter. Petitioner's associate, Davon Reese, got into a confrontation with the murder victim. The victim's friend, Christopher Ritter, identified Petitioner as being present during the altercation and "backing up" Reese. Ritter identified Petitioner as wearing all black clothing—the same clothing worn by the shooter in the video. This prior argument or dispute with the murder victim is circumstantial evidence that establishes Petitioner's identity as the murderer. *See, e.g.*, *Moreland v. Bradshaw*, 699 F.3d 908, 917 (6th Cir. 2012).

Hopp then identified Petitioner from the videotape as being the man dressed in all black by the dollar store, which matched the clothing that Ritter testified that Petitioner was wearing during the confrontation between Reese and the victim. A witness's identification of a defendant from a surveillance videotape or photograph is sufficient evidence to identify the perpetrator of the crime. *See, e.g.*, *United States v. Ayala,* 755 F. App'x 499, 509–10 (6th Cir. 2018) (unpublished); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). Although other people were present during the shooting, the identification of Petitioner as the shooter is bolstered by him being the only person in the video wearing the same color clothing as what he was wearing—moments earlier—during the original confrontation with the victim. *See United States v. Donald*, 86 F. App'x 939, 944 (6th Cir. 2004) (unpublished).

### 2.

Finally, Petitioner apparently argues none of the witnesses, including Hopp, testified that Petitioner was the person who actually fired the weapon that killed the murder victim.

Although no witnesses actually testified that Petitioner discharged a firearm, Hopp testified that Petitioner removed an object from his pocket and made a "racking" motion. ECF No. 9-15 at PageID.905. After Petitioner went behind the dollar store, a man wearing the same black clothing that Ritter testified that Petitioner was wearing emerged from behind the store, crouched down, and pointed his arm at the murder victim, after which the murder victim fell. All this evidence is sufficient for a rational trier of fact to infer that Petitioner had a weapon in his hands and fired it at the murder victim and the other people present, thus, supporting Petitioner's murder and assault convictions. *See Wilson v. MacLaren,* No. 2:18-CV-11243, 2019 WL 1002609, at * 5 (E.D. Mich. Mar. 1, 2019) (finding that evidence supported conviction for felonious assault and various weapons charges, even though witness did not see petitioner with an actual gun, because the witness testified that shots were fired after the petitioner removed a black object from his coat, the shots came from the area by the car where the petitioner was standing, and no one else was by the car then).

As indicated, Petitioner is not entitled to relief on his sufficiency-of-evidence claim.

**3.**

Petitioner adds that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder.

The Michigan Court of Appeals rejected that claim as follows:

> Second, defendant argues that there was insufficient evidence of premeditation and deliberation. We again disagree. The victim argued with defendant's friend, and defendant backed his friend up, minutes before the shooting. From Officer Hopp's testimony, the jury could infer that the four young men sought cover in the dollar store while defendant retrieved a gun from his pocket and racked it. The jury could also infer that defendant ran to the back of the strip mall, exited on the other side to approach the victim from behind, and then peeked toward the victim from the side of the building before firing the shots. Given that defendant only needed time to take a second look, the evidence of defendant's conduct inside the dollar store after the altercation with the victim, and then his

> movements and activity after leaving the dollar store before the shooting, viewed in a light most favorable to the prosecution, was sufficient evidence to enable a rational trier of fact to find beyond a reasonable doubt that defendant shot the victim with the requisite premeditation and deliberation to support his first-degree murder conviction.

*People v. Carter*, No. 336793, 2018 WL 3862103, at *4 (Mich. Ct. App. Aug. 14, 2018) (per curiam) (unpublished) (internal citations and footnote omitted). It also noted that the video footage displayed Petitioner fleeing from the strip mall after the shooting, which could be considered as evidence of guilt. *Id.* at *4 n.3.

In order to convict a defendant of first-degree murder in Michigan, the state must prove that the defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995)). Premeditation may be established through evidence of the following factors:

> 1) the prior relationship of the parties;
> 2) the defendant's actions before the killing;
> 3) the circumstances of the killing itself;
> 4) the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 531 N.W.2d at 786.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d 586, 594–95 (E.D. Mich. 2002) (quoting *People v. Vail*, 227 N.W.2d 535, 538 (Mich. 1975) (en banc)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be

- 12 -

sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 229 N.W.2d 497, 500 (Mich. Ct. App. 1975)).

Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Turner*, 233 N.W.2d 617, 619 (Mich. Ct. App. 1975)). Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998).

Here, there was sufficient evidence for a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation when he shot the victim. The evidence established that Petitioner's associate was arguing and fighting with the murder victim before the shooting. Evidence that Petitioner or his friend had a prior dispute with the victim supports a reasonable inference that the later shooting was premeditated. *Scott v. Elo*, 302 F.3d 598, 603 (6th Cir. 2002). The evidence from the videotape suggests that Petitioner ambushed the murder victim, which supports a finding of premeditation and deliberation. *See Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004). Evidence that Petitioner fired multiple gunshots can also establish premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014) (unpublished). Finally, Petitioner's attempt to flee the scene also supports a finding of premeditation and deliberation. *Marsack v. Howes*, 300 F. Supp. 2d at 492.

Based on this ample evidence and state-court deference regarding sufficiency-of-evidence claims, this Court cannot say that the Michigan Court of Appeals's decision was contrary to or unreasonably applied *Jackson v. Virginia*. *See Durr v. Mitchell*, 487 F. 3d 423, 448 (6th Cir. 2007); *see also Titus v. Jackson*, 452 F. App'x 647, 650 (6th Cir. 2011) (unpublished) ("[A] determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution.").

For these reasons, Petitioner is not entitled to relief on his sufficiency-of-evidence claim.

## C.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). When a court rejects a habeas claim on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

In applying that standard, a district court may not conduct a full-merits review and must "limit its examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." *Miller-El*, 537 U.S. at 323. "

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not made a substantial showing of the denial of a constitutional right because reasonable jurist would not debate this Court's conclusions. Accordingly, a certificate of appealability will not issue. Further, Petitioner may not proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* FED. R. APP. P. 24(a).

## IV.

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.

**This is a final order and closes the above-captioned case**.

Dated: September 13, 2022        s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge